UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 16-CR-10305-NMG |
| | ) | |
| | ) | |
| MARTIN GOTTESFELD, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION OF THE UNITED STATES TO DEFENDANT'S MOTION
TO VACATE AND SET ASIDE HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255**

On October 2, 2023, defendant Martin Gottesfeld filed a *pro se* motion pursuant to 28
U.S.C. § 2255 ("the Motion") asking this Court to vacate and set aside his conviction and sentence
for Gottesfeld's role in devastating cyber attacks in 2014 that targeted Boston Children's Hospital
("Boston Children's") and the Wayside Youth and Family Support Network ("Wayside"). (Docket
No. 457). For all of the reasons set forth below, the Court should deny the Motion.

Factual Background

The evidence at trial established that in March and April 2014, Gottesfeld and others
launched "Distributed Denial of Service" cyberattacks against Boston Children's and Wayside,
causing each to lose their internet capabilities. Gottesfeld targeted these institutions because of
their roles in caring for Justina Pelletier, a child whose medical condition and treatment were at
the center of a custody dispute between her parents and the Commonwealth of Massachusetts
that received national attention. In an article published online following his arrest, Gottesfeld
claimed responsibility for the attack. *Why I Knocked Boston Children's Hospital Off the
Internet:  A Statement from Martin Gottesfeld*, Huffington Post (Sept. 18, 2016),

1

https://www.huffpost.com/entry/why-i-knocked-boston-childrens-hospital-off-the-internet-a-statement-from-martin-gottesfeld_n_57df4995e4b08cb140966cd3 (visited January 12, 2024).

<u>Relevant Procedural History</u>

The FBI investigated the cyber attacks and identified Gottesfeld as a subject.  In September 2014, it applied for and obtained a warrant to search Gottesfeld's Somerville residence from the Honorable Marianne B. Bowler, United States Magistrate Judge.  The search yielded evidence linking Gottesfeld to the attacks, which led him to proffer with the government (accompanied by counsel).  Gottesfeld and the government also entered into plea negotiations.  In early 2016, however, Gottesfeld left Massachusetts without notice to his counsel or to friends and family.  The FBI charged him by complaint and, on February 17, 2016, arrested him—a Disney cruise ship had rescued Gottesfeld and his (now) wife from a disabled motorboat in the Straits of Cuba during what appeared to be an attempt to flee prosecution.[1]  Judge Bowler ordered Gottesfeld detained pending trial, and the grand jury indicted him on October 19, 2016.  The Indictment (Docket No. 28) charged Gottesfeld with two crimes:  intentionally causing damage to a protected computer, in violation of 18 U.S.C. § 1030(a)(5) (Count 2), and conspiring with others to commit that offense, in violation of 18 U.S.C. § 371 (Count 1).

Some five different attorneys represented Gottesfeld over the course of his case.  The first four were permitted to withdraw.  Gottesfeld's final attorney, David Grimaldi, Esq., represented Gottesfeld from March 2018 through his eight-day trial on the Indictment.  On August 1, 2018, the jury convicted Gottesfeld on both counts, finding unanimously in the process that Gottesfeld

---

[1] In one of his trial's many unusual developments, Gottesfeld testified that he had unsuccessfully sought political asylum in Cuba and was on his way back to the United States when his boat broke down.

had damaged protected computers without authorization and caused Wayside and Children's Hospital more than $5,000 in loss.  (Docket No. 297).

On January 10, 2019, the Court sentenced Gottesfeld to 10 years' imprisonment on Count 2 and a consecutive term of 1 month's imprisonment on Count 1.  (Docket No. 389).  The Court also ordered Gottesfeld to pay $442,930 in restitution to Boston Children's and Wayside.  *Id.*  The Bureau of Prisons released Gottesfeld after he had served approximately seven and one-half years of the custodial portion of his sentence.  https://www.bop.gov/inmateloc (Gottesfeld released Nov. 15, 2023).  He is now serving a three-year term of supervised release.

Gottesfeld appealed his conviction (but not his sentence) to the First Circuit Court of Appeals.  *United States v. Gottesfeld*, 18 F.4th 1 (1st Cir. 2021).  As discussed below, among other grounds for appeal, Gottesfeld claimed that the Court had erred by (1) excluding certain periods of pre-indictment delay under the Speedy Trial Act; (2) denying his motion to suppress evidence, based on Judge Bowler's failure to recuse herself from considering the government's application to search Gottesfeld's home, where her husband was employed by the Harvard Medical School and Brigham & Women's Hospital, both of which were affected by the cyber attack; (3) denying five of Attorney Grimaldi's motions to withdraw as counsel; (4) closing the courtroom to the public in violation of the Sixth Amendment when hearing those motions to withdraw; (5) precluding Gottesfeld from offering at trial evidence supporting the affirmative defense known as "defense of another"; and (6) refusing to recuse itself after the jury's verdict and before sentencing.  The First Circuit rejected each of Gottesfeld's arguments and affirmed his conviction.  *Gottesfeld*, 18 F.4th at 17.

<u>The Motion</u>

Across its 128 pages, Gottesfeld's *pro se* Motion (liberally construed) raises eight claims. Motion at 4 ("Defendant brings this motion for eight reasons.")  He claims:

First, that the Court erred when it precluded him from presenting evidence and arguing that he acted in defense of Justina Pelletier (Motion at 82);

Second, that the trial evidence established he did act in defense of Pelletier (Motion at 103);

Third, that the government improperly argued to the jury that it was required to convict him (Motion at 104);

Fourth, that the government violated its proffer agreement with Gottesfeld when it impeached his trial testimony with information he provided during his proffer (Motion at 109);

Fifth, that the Court erred when it excluded time between Gottesfeld's arrest and his indictment under the Speedy Trial Act (Motion at 115);

Sixth, that the First Circuit Court of Appeals denied him an impartial appellate panel, because the Honorable Sandra Lynch, who sat on the panel that heard Gottesfeld's appeal, sits on a statistically disproportionate number of cases involving Harvard, Massachusetts child welfare agencies, and the Department of Health and Human Services (Motion at 118);

Seventh, that three government prosecutors and three judges involved in his case "have personal, financial, and public ties to Harvard" (Motion at 121); and

Eighth, the he was denied the Constitution's guarantee of effective assistance of counsel (Motion at 126-27) because his lawyers (i) did not prepare him to testify or for cross examination; (ii) did not object to the government's impeachment of Gottesfeld with information it learned during his proffer; (iii) failed to renew a suppression motion based on Judge Bowler's ties through her spouse to Harvard Medical School and Brigham & Women's Hospital; and (iv) failed to press

4

the Court to allow Gottesfeld to pursue his affirmative defense that he acted in defense of Justina Pelletier.  (Motion at 5-6).

Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence.  The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).  Gottesfeld bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under section 2255.  *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  In deciding whether a petitioner has met his burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A motion filed pursuant to section 2255, however, is not a substitute for a direct appeal.  *See Cruz-Rivera v. United States*, 2023 WL 6294203 (D.P.R. Sept. 27, 2023) (citing *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016)).  As a result, "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."  *Id.* (citations omitted).  Moreover, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal."  *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (quotation marks and citations omitted).  If a section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from judicial review unless a petitioner can demonstrate both

5

(1) cause for the procedural default and (2) actual prejudice resulting from the error asserted.  *Id.*; *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Argument

I.      Several of Gottesfeld's Claims Are Procedurally Barred

As noted above, it is well settled that "[i]ssues disposed of in [a] prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion."  *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994); *see also Elwell v. United States*, 95 F.3d 1146 (1st Cir. 1996) (holding that petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law").  Several of Gottesfeld's claims violate this basic principle and must be dismissed.

*Grounds 1 and 2 – Defense of Another*

Before the First Circuit, Gottesfeld challenged this Court's determination that he could not introduce evidence or argue to the jury that he acted in defense of Pelletier.  *Gottesfeld*, 18 F.4th at 15 ("Gottesfeld challenges the district court's order precluding him from raising at trial the affirmative defense known as 'defense of another'").  The First Circuit held that none of the "news and television reports" Gottesfeld relied on for his defense could satisfy his burden of demonstrating that "he reasonably believed that [Pelletier] faced the threat of immediate unlawful force."  *Id.*  It also held that, even if Gottesfeld thought that "some individual or group of individuals were using or threatening to use unlawful force, that would have provided no justification for Gottesfeld to take hostage thousands of other persons' internet connections."  *Id.*

Gottesfeld rehashes his "defense of another" argument in the Motion.  His first ground states "Defendant should have been afforded the opportunity to plead his theory of these case, especially where, as herein detailed, competent evidence was available in support of that

6

theory….."  His second ground states, "Under the defense-of-another theory, Defendant is actually innocent", and that he "committed no crime".  (Motion at 4).  The "competent evidence" Gottesfeld describes is the same pile of "news and television reports stating that Pelletier was being 'abused' and 'tortured' under the care of Boston Children's and Wayside" that the First Circuit held insufficient to support Gottesfeld's claim to having acted in defense of Pelletier.  *Gottesfeld*, 18 F.4th at 15.

Because the First Circuit rejected these first and second grounds, they are procedurally defaulted on collateral review.  The Court should dismiss them.[2]

*Ground 5 – The Speedy Trial Act Claim*

Gottesfeld raised several Speedy Trial Act claims before the First Circuit regarding three ends-of-justice continuances that the Court had ordered, including his arguments that the judge who entered them did not make required findings under the Act—that the ends of justice served by excluding time under the Act outweigh the best interest of the public and the defendant in a speedy trial—and that the Court did not set them forth "in the record of the case", as required by 18 U.S.C. § 3161(h)(7)(A).  *Gottesfeld*, 18 F.4th at 6-7.  The First Circuit rejected the first of these arguments, finding that the judge who allowed the continuance motions "necessarily adopted" the grounds raised in them, "which supports the conclusion that she was 'persuad[ed] … that the factual predicate for a statutorily authorized exclusion of delay could be established."  *Id.* at 7 ("No more was required at the time the challenged continuances were granted.").

---

[2] This claim would in any event fail on the merits, for the reason the First Circuit provided in its well-reasoned opinion:  "[P]ublic commentary and opinion comparing Pelletier's treatment to torture—which is all he cites to support his claim—does not alone support a finding that [Gottesfeld] reasonably believed that [Pelletier] was in fact being subject to torture.  To rule otherwise would be to empower every citizen with the ability to simultaneously incite and immunize criminal conduct by another even as a judicial tribunal is available to hear the claims of harm.  *United States v. Gottesfeld*, 18 F.4th 1, 16 n.8 (1st Cir. 2021).

The First Circuit also rejected Gottesfeld's second argument—that the requisite findings supporting continuances were not set forth "in the record of the case." *Id.* at 7.  It held that the Court, in denying Gottesfeld's motion to dismiss for violations of the Speedy Trial Act, adequately described the bases for its conclusion that the continuances were in Gottesfeld's interest—that Gottesfeld was seriously considering a proposed plea agreement. *Id.*  The First Circuit also rejected Gottesfeld's further argument that Judge Gorton's stated reasons could not support an ends-of-justice continuance that the MBD judge (Judge Burroughs) had granted earlier. *Id.* ("the trial judge's order denying Gottesfeld's motion to dismiss sufficiently set forth the reasons supporting the challenged ends-of-justice determination").

Gottesfeld's Motion raises claims that he pursued in the First Circuit—that the Court's order denying his motion to dismiss was inadequate, and that the miscellaneous business docket, where the Court first excluded time, is "not the record of the case" within the meaning of 18 U.S.C. § 3161(h)(7)(A).  Motion at 116-117.  Gottesfeld acknowledges the First Circuit's ruling, but he argues that the District Court's reasons supporting the ends-of-justice determination were set forth in a memorandum opinion rather than the order entered five days earlier, which denied the motion and indicated that "a memorandum will follow with a more detailed explanation of this Court's decision." (*Compare* Docket No. 205, the Court's June 14, 2018 Order *with* Docket No. 209, the Court's June 19, 2018 Memorandum and Order).  Gottesfeld is simply playing word games.  The First Circuit clearly evaluated and found satisfactory the reasoning set forth in the Court's Memorandum and Order—and not the docket entry denying Gottesfeld motion—because the First Circuit quotes directly from the Court's Memorandum and Order.  18 F.4th at 7 (quoting from the Court's opinion at Docket No. 209 that Gottesfeld was "seriously considering" a plea agreement—words that do not appear in the Court's initial order at Docket No. 205).  Having challenged these

Speedy Trial Act rulings before the First Circuit, Gottesfeld's cannot challenge the Memorandum and Order denying his Speedy Trial Act motion again on collateral review.[3]

*Ground 7 – Gottesfeld's Recusal Claims Regarding Judge Bowler and Judge Gorton*

Gottesfeld argues throughout the Motion that Judge Bowler's, Judge Gorton's, Judge Lynch's, and several prosecutors' ties to Harvard University, Harvard Medical School, Harvard Law School, the Brigham & Women's Hospital, or Children's Hospital, among other Harvard-affiliated institutions, or to charities that donated to the victim institutions (Boston Children's or Wayside), required their mass recusal from his case.  Motion at 6 ("But the courts belong to the United States, not Harvard").  Relying on the internet as a source, Gottesfeld sees conflicts where:

- Judge Bowler's husband was a professor at Harvard Medical School and a physician on the staff of Brigham & Women's Hospital, both of which were affected by Gottesfeld's attack, and had various organizational ties to Children's Hospital (¶¶ 57-58, 61-63);

- Judge Bowler had been a research assistant at Harvard Medical School nearly 50 years ago (¶ 64) and served on a committee or as a board chair at other Harvard-affiliated teaching hospitals, Massachusetts General Hospital and New England Baptist Hospital (¶¶ 70-73);

- Judge Bowler referred to Children's Hospital colloquially as "Children's" at a hearing (¶¶ 83-84)

- Judge Bowler served as a director emerita of the Boston Foundation, which made charitable contributions to Children's Hospital and Wayside, among myriad other recipients (¶¶ 65-68);

---

[3] To the extent Gottesfeld now argues the Memorandum and Order's reasoning was somehow late under the Speedy Trial Act's requirement that the Order be entered "by the time" a district court rules on a defendant's motion to dismiss (*i.e.*, by the time the Court first denied the motion), he waived that argument by not raising it before the First Circuit on direct appeal, and by not showing reason here for failing to have done so.  *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) ("[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal.").  The argument is, in any event, frivolous, and it does not warrant relief under section 2255 where the District Court indicated in its first Order that it would set forth its grounds for the order in a separate Memorandum and Opinion.

- Judge Gorton, for his part, held roles in a family business that made charitable contributions to Children's Hospital, Brigham & Women's Hospital, and various global nutrition initiatives that partnered with Harvard Medical School and its affiliated teaching hospitals (¶¶ 90-97);

- Judge Gorton was the former chair of the Board of Trustees at an independent school that sent students to Harvard University (¶ 100), and Harvard Law School posted listings for judicial clerkships, including clerkships with Judge Gorton, on its website (¶ 101);

- Judge Gorton previously served as a board member of the New England Home for Little Wanderers, which identified Children's Hospital as a "hospital partner" in its literature (¶ 103), and which received a $50,000 grant from Children's Hospital (¶ 109);

- Judge Gorton's niece attended Harvard (¶ 110);

- one Assistant U.S. Attorney assigned to the case graduated from Harvard Law School and had spoken at a Harvard reunion in April 2018 (before the trial but after he had left government service) (¶ 53);

- a second Assistant U.S. Attorney assigned to the case made charitable contributions to Greater Boston Legal Services, which itself contributed to Harvard Law School and Boston Children's (¶ 56);

- a third Assistant U.S. Attorney assigned to the case was married to a physician who trained in a Harvard residency program and later (after the trial) worked for the same program;

- The then-incumbent United States Attorney, according to news accounts, sought a teaching position at Harvard after leaving government service; and

- Judge Lynch, who sat on the First Circuit panel that heard Gottesfeld's appeal, worked for 14 years at the law firm Foley, Hoag & Eliot—a "Harvard stable", according to one published account, that was known to hire talented lawyers from Harvard Law School.

Gottesfeld's online sleuthing provides no support for his motion. As an initial matter, the First Circuit considered and rejected Gottesfeld's claims that Judges Bowler and Gorton should have recused themselves. As to his argument that Judge Bowler, because of her husband's affiliations with Harvard Medical School and Brigham & Women's Hospital, was not a neutral, detached, or impartial judge when she issued a search warrant for Gottesfeld's residence, the First

Circuit held that Gottesfeld "presented no evidence that [Judge Bowler's] spouse was actually affected by the cyberattack in any substantial manner", and concluded that the record was devoid of effects as to Judge Bowler's husband beyond "inconvenience, delay, and likely annoyance". *Gottesfeld*, 18 F.4th at 9-10. These effects, the First Circuit concluded, did not require recusal. Because Gottesfeld raised this recusal argument as to Judge Bowler's spouse's employment before the First Circuit, he may not do so on collateral review. *See Elwell*, 95 F.3d at *4.

Gottesfeld's argument regarding the District Court's refusal to recuse itself before sentencing fare no better. After reciting the reasons that a judge must recuse himself, the First Circuit acknowledged the argument Gottesfeld raises in his Motion: "the trial judge had a financial and personal interest in maintaining the reputation of Boston Children's, which was a target of Gottesfeld's cyber attack." The First Circuit then *rejected* that argument, finding no reason for the Court to have recused itself based on "remote, contingent, indirect or speculative" interests:

> Gottesfeld's allegations of the judge's financial interests in the reputation of Boston Children's–based on an attenuated series of connections involving non-profits to which the judge had donated—are far too remote and indirect to suggest even an appearance of partiality….

*Gottesfeld*, 18 F.4th at 17. Because the First Circuit rejected Gottesfeld's claim regarding Judge Gorton's attenuated connections to non-profits and the victims in this case, this Court should reject so much of the Motion that makes the same claim again. *See Elwell*, 95 F.3d at *4.

The remainder of Gottesfeld's recusal arguments are without merit, albeit for different reasons. Gottesfeld's internet citations make clear that all of his arguments regarding Judge Bowler's need to recuse based on her own professional experiences (such as having worked in a Harvard research lab nearly 50 years ago) or her charitable commitments (such as serving as a board member of the Boston Foundation) were known or knowable by Gottesfeld before he appealed his conviction and sentence. Gottesfeld has waived them by failing to raise them before

11

the District Court or on direct appeal, and by failing to offer sufficient reason for not having done so. *See Bucci*, 662 F.3d at 27 ("[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal.").[4]  The same is true of his claims regarding the then-United States Attorney, the assigned Assistant United States Attorneys, or Judge Lynch.   All of their professional, charitable, and spousal affiliations—even if they were not too attenuated, remote, and indirect to amount to recusal fodder, which they are—could have been challenged before the District Court or the First Circuit.  Gottesfeld does not explain why he did not raise them earlier, and he cannot rely on them here.  *See Bucci*, 662 F.3d at 27.[5]

---

[4] Gottesfeld's recusal claims as to Judge Bowler and the assigned prosecutors are in any event based on the same kinds of "attenuated" and "remote and indirect" connections that the First Circuit found lacking and would not give rise to even an appearance of impartiality.  Even if there were no procedural bar, the Court should deny his Motion as to their recusals on the merits.

[5] Gottesfeld posits based on his own statistical analysis that Judge Lynch sits on a disproportionate number of First Circuit matters involving Harvard, the Massachusetts Department of Children and Families, state and federal health and human services departments and other related entities, and that Judge Lynch wrote a disproportionate number of orders and precedential opinions arising from these cases.  (Motion at ¶¶ 189-207).  Gottesfeld seems to argue that he was denied the random assignment of an appellate judge in his case.  (Motion at 118).  But his analysis fails to establish that his particular panel was not randomly drawn.  And even if he had so established, for purposes of argument, Gottesfeld could have raised this issue to the First Circuit, or on writ of certiorari to the Supreme Court.  But he did not, and he has waived it.  In any event, Gottesfeld cites no authority that his panel-based claim is cognizable under section 2255.  Nor has Gottesfeld shown any prejudice, as there is no basis to think a differently constituted First Circuit panel would have decided any of Gottesfeld's appellate claims differently.

*Ground 4 - Gottesfeld's Proffer-based Claim*

Gottesfeld argues in the Motion that the government cross-examined him about information he provided during a proffer, and then offered his trial testimony in response to that cross-examination in closing argument, in violation of a proffer agreement not to do so.  (Motion at ¶¶ 268-74, pp. 109-115).  This claim, in addition to being without merit,[6] is procedurally defaulted on section 2255 review because Gottesfeld did not raise it before the First Circuit and has not explained why he failed to do so.  Gottesfeld's brief on appeal raises no challenge to Gottesfeld's cross-examination or to the government's closing argument.  *United States v. Gottesfeld*, Brief of Appellant Martin Gottesfeld, 2020 WL 5760577 (1st Cir. Jul. 30, 2020).

*Ground 3 -- Closing Argument*

Gottesfeld argues (Motion at p. 104) that the government misrepresented the law when it explained to the jury during its closing argument:

> Judge Gorton is going to instruct you in a bit about the elements of the charges in this case. Elements are a bit like a to-do list for your deliberations. You can't get to a verdict without considering each of them.  Taking the two charges, or counts as they're called, one at a time, *if you find unanimously that the Government has proven each of the elements of the count beyond a reasonable doubt, you must convict on that count.*

---

[6] The government impeached Gottesfeld in response to, among other misleading statements, his testimony on direct examination that a Distributed Denial of Service ("DDOS") was not a "code", "command" or "information", but was instead "white noise", presumably in an effort to place his conduct (in the jury's eyes) beyond the scope of 18 U.S.C. § 1030(a)(5)(A), *see* Trial Transcript, Jul. 26, 2018 at 241-242; his illustration of a DDOS that depicted only 4 servers (instead of the 40,000 that he actually used), *id.* at 158-159, and his statements that he "never transmitted a code to [Boston Children's]", *id.,* Jul. 27, 2018 at 15, all of which implied falsely to the jury that he had no involvement in the Boston Children's DDOS, or less involvement than the government's case showed.  Gottesfeld similarly implied falsely on direct examination that he did not intend to damage the Boston Children's network to the extent that he had.  The government's unobjected-to cross-examination was a fair response to this minimization and misdirection and was well within what the proffer agreement permitted:  "to rebut any evidence offered, or factual assertions made, by or on behalf of Gottesfeld at any state of a criminal … proceeding (including but not limited to … trial…) which is inconsistent with, or contrary to statements made during the proffer…." (Docket No. 216-1).

Trial Transcript Day 7, July 31, 2018, at 9 (emphasis supplied).  Gottesfeld seems to suggest that by telling the jury that it "must" convict if it found the elements beyond a reasonable doubt, the government co-opted the jury's prerogative to acquit.  Apart from being frivolous,[7] Gottesfeld's claim is procedurally defaulted on section 2255 review—he did not object to this part of the government's closing argument; nor did he appeal this or any other part of the closing argument to the First Circuit.  As noted above, Gottesfeld's brief on appeal raises no challenge to the government's closing argument.  *Gottesfeld*, Brief of Appellant Martin Gottesfeld, 2020 WL 5760577 (1st Cir. Jul. 30, 2020).  The Motions claims regarding the closing argument are accordingly procedurally barred.

## II.   Gottesfeld Cannot Demonstrate Ineffective Assistance or Prejudice From It

What remains of the Motion is Gottesfeld's argument (in Ground 8) that he was denied the effective assistance of counsel in violation of the Sixth Amendment to the Constitution.  While such a claim is cognizable under section 2255, Gottesfeld has a steep burden.  A petitioner claiming such a violation must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To succeed on such a claim, a petitioner must establish both (1) that

---

[7] It is, in any event, a correct statement of the law (in a case in which the court does not instruct on an affirmative defense) that if a jury that finds beyond a reasonable doubt the existence of each element of the offense, the jury must convict the defendant.  The First Circuit's pattern criminal jury instruction 3.02 says as much:  "If, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to [defendant]'s guilt of a particular crime, it is your duty to acquit [him/her] of that crime. On the other hand, if, after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of [defendant]'s guilt of a particular crime, you should vote to convict [him/her]."  This Court similarly set the appropriate bar when it instructed the jury in this case:  "In order to find the Defendant guilty of Count I, you must find that the Government has proven beyond a reasonable doubt each of the following three elements of the offense."  Tr. Tr., Day 7, at 77.  Gottesfeld's contrary suggestion is an endorsement of the notion that the jury must be told it can nullify proven charges, something courts may not do.  *United States v. Sepulveda*, 15 F.3d 1161, 1189-1190 (1st Cir. 1993).

his counsel provided deficient assistance and (2) that he suffered prejudice as a result.  *Id.*  The first prong requires a petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness.  *Id.* at 689.  A court making that evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*  A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances."  *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007).  The second prong requires petitioner to show that counsel's deficient performance resulted in "prejudice"— that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Gottesfeld does not meet *Strickland*'s exacting standard as to any of the deficiencies he claims.  As noted above, Gottesfeld contends that his lawyers:  (i) failed to press the Court to allow Gottesfeld to pursue his affirmative defense that he acted in defense of Justina Pelletier; (ii) failed to renew a suppression motion based on Judge Bowler's ties through her spouse to Harvard Medical School and Brigham & Women's Hospital; (iii) did not object to the government's impeachment of Gottesfeld with his proffer statements; and (iv) did not prepare him to testify or for cross examination.  (Motion at 5-6).

As to the argument that counsel failed to press his "defense of another" theory, Gottesfeld cannot show either cause or prejudice under *Strickland*.  The First Circuit ruled in Gottesfeld's case that he was *not* entitled to introduce evidence or argue to the jury that he acted in defense of Pelletier.  *Gottesfeld*, 18 F.4th at 15-16 ("[H]e marshals no case to support a finding that he reasonably believed she faced the threat of immediate unlawful force").  It cannot have been deficient performance for trial counsel to refrain from advancing a defense that the trial judge

correctly did not permit.  Moreover, counsel in fact vigorously opposed the government's motion to preclude "defense of another" evidence.  The Court need go no further, as courts need not "address both components of the [Strickland] inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.  But, even if Gottesfeld could show cause, he was hardly prejudiced by counsel's failure to press his invalid theory further.  Review of Gottesfeld's lengthy testimony makes clear that, out of concern that it not impinge on Gottesfeld's right to take the stand in his own defense, the Court gave him wide leeway to testify that he subjectively believed Pelletier was in danger.  Gottesfeld's belief was thus squarely before the jury, even if the law and facts before the Court did not warrant a "defense of another" instruction.

Gottesfeld's criticism that counsel failed to renew the suppression motion when trial evidence showed that Brigham & Women's Hospital—where Judge Bowler's husband worked—had been affected by his DDOS attack fares no better.  Gottesfeld cannot show deficient performance (*i.e.*, *Strickland* cause) where counsel failed to press a recusal theory that the First Circuit rejected.  18 F.4th at 10 (noting that "indirect" harm that was "speculative" as to its impact on Judge Bowler's spouse did not require recusal).  In the absence of a requirement that Judge Bowler recuse herself, counsel had no theory of suppression to pursue.

The third of Gottesfeld's claims of *Strickland* error—that counsel failed to object when the government elicited information that Gottesfeld had volunteered in a proffer to cross-examine him—also fails for lack of cause.  As noted above, it was not objectionable to use proffered information to rebut factual assertions that Gottesfeld made, and that counsel made on his behalf, during Gottesfeld's direct testimony.

Gottesfeld's final argument is the claim that counsel did not prepare him to testify or to be cross-examined.  (Motion at 6, 127).  As an initial matter, it strains credulity for Gottesfeld to

16

suggest that counsel led Gottesfeld through hours upon hours of direct testimony—testimony that methodically traced the arc of Gottesfeld's childhood, education, professional development, his involvement in the charged offenses, the search of his home, and his later flight to Cuba to seek asylum—on the fly.  It is similarly difficult to imagine that counsel and client delivered an organized and choreographed performance that attempted to explain away most (if not every bit) of the government's inculpatory evidence, and that rivaled in length Wagner's *Die Meistersinger von Nürnberg*—the longest-known opera at 5 hours and 15 minutes—with no preparation.[8]

More importantly, Gottesfeld provides "no basis to conclude that additional preparation or a different method of preparation would have materially altered the jury's assessment of [Gottesfeld's] testimony and credibility."  *See Williams v. Maine*, 2023 WL 2402818 (D. Me. Mar. 8, 2023).  As noted above, Gottesfeld wrote a confession to the charges in the Indictment and published it in the *Huffington Post*, explaining, over his own byline, "*Why I Knocked Children's Hospital Off the Internet*".  As he had in the article as to Boston Children's, Gottesfeld then conceded and testified at trial, as to both Boston Children's and Wayside, that he had targeted them for DDOS attacks because he perceived (from media reports and the internet) that these healthcare institutions were torturing Pelletier.  It is difficult to imagine any amount of preparation that would negate Gottesfeld's devastating admissions of guilt.  He accordingly cannot show *Strickland* prejudice based on an alleged failure to prepare him to testify or to be cross-examined.

---

[8] To the extent the Court must resolve this factual dispute—which the government submits that it need not based on Gottesfeld's failure to demonstrate *Strickland* prejudice as described below—the government respectfully requests that the Court find that Gottesfeld has waived the attorney-client privilege and work-product doctrine with respect to his preparing to testify, and require that Gottesfeld's trial counsel discuss the extent of their preparation for Gottesfeld's testimony with the government.

<u>Conclusion</u>

For all of these reasons, the United States respectfully requests that the Court deny Gottesfeld's Motion and his request it that the Court vacate his conviction and sentence.

JOSHUA S. LEVY
ACTING UNITED STATES ATTORNEY

SETH KOSTO
Digitally signed by SETH
KOSTO
Date: 2024.01.12 10:39:24
-05'00'
_____
By:  SETH B. KOSTO
Assistant United States Attorney

January 12, 2024

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true copy of the government's opposition to Defendant Martin Gottesfeld's motion pursuant to 18 U.S.C. § 2255 to be served upon Gottesfeld by U.S. mail at his address of record.

SETH KOSTO
Digitally signed by SETH
KOSTO
Date: 2024.01.12 10:39:57
-05'00'
_____
SETH B. KOSTO
Assistant United States Attorney

January 12, 2024

18